PADGETT v. HINES et al.    (No. 111.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 25, 1917. Rehearing Denied Feb. 28, 1917.)

1. ATTORNEY AND CLIENT ⟝129(2)—MISAPPROPRIATION OF CLIENTS' NOTE—ACTION.

Petition against an attorney, employed by plaintiffs to defend a suit alleging that defendant hypothecated notes, given to him by plaintiffs for purpose of settlement of such suit, *held* not subject to general exception.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 288, 289.]

2. APPEAL AND ERROR ⟝216(2) — RESERVATION OF GROUNDS OF REVIEW — OMISSION FROM CHARGE.

If there was anything omitted from the court's charge that was necessary to a proper presentation of the case from defendant's standpoint, such matter should have been requested by defendant by special instruction, or objection should have been made at the time, and before the charge was read to the jury, and, in the absence of request or objection, defendant cannot complain of the omission on appeal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627, 628.]

3. TRIAL ⟝349(3)—SUBMISSION OF SPECIAL ISSUES—CONSTITUTIONALITY OF STATUTE.

The Legislature was authorized to enact a law permitting the judges of the district courts to submit questions to a jury on special issue, without being requested to do so; such enactment not being obnoxious to the Constitution.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 825.]

4. ATTORNEY AND CLIENT ⟝129(2)—ACTION AGAINST ATTORNEY — MISAPPROPRIATION OF CLIENT'S NOTE—EVIDENCE.

In suit against an attorney to recover an amount realized by him in dealing with notes intrusted to him by his clients, defendants in a former suit, for purposes of a settlement, an instrument, signed by plaintiff in that suit, acknowledged before a notary, and filed for record, which purported to "give, grant and will" notes to his daughter, a defendant in the former suit, one of plaintiffs herein, *held* admissible.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 288, 289.]

5. APPEAL AND ERROR ⟝742(1) — ASSIGNMENT OF ERROR—SUPPORT BY STATEMENT.

Where appellant submitted no statement from the record under his assignment of error challenging the action of the trial court in not having submitted the question of damages to the jury, the assignment will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000.]

6. APPEAL AND ERROR ⟝213—RESERVATION OF GROUNDS OF REVIEW—REQUEST FOR SUBMISSION OF ISSUE.

Complaint cannot be made of failure to submit an issue to the jury, where no request was made for the submission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1165, 1304–1308.]

7. TRIAL ⟝169 — IMPROPER ARGUMENT—EFFECT.

That counsel for plaintiffs indulged in improper argument beyond the issues did not entitle defendant to a directed verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 381–387, 389.]

8. APPEAL AND ERROR ⟝207—RESERVATION OF GROUNDS OF REVIEW—IMPROPER ARGUMENT.

In the absence of request to the lower court to instruct the jury that counsel's argument was improper, the Court of Appeals cannot reverse on account of the argument.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1500.]

9. TRIAL ⟝388(2)—TRIAL TO JURY—FILING CONCLUSIONS OF LAW AND FACT.

Where the case is tried by a jury, the court need not file conclusions of law and fact.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 909.]

Appeal from District Court, Sabine County; A. E. Davis, Judge.

Suit by John Hines and others against E.

P. Padgett. From a judgment for plaintiffs, defendant appeals. Affirmed.

J. W. Minton and E. P. Padgett, both of Hemphill, for appellant. Carter, Walker & Cousins, of Hemphill, for appellees.

BROOKE, J. John Hines et al., plaintiffs in the court below, on the 5th of March, 1915, filed their original petition in this cause, as follows:

"(1) That therefore, to wit, on .or about the 28th day of January, 1914, George. Tucker filed suit against these defendants in the district court of Sabine county, Tex., seeking an adjustment of a business transaction between these plaintiffs and the said George Tucker, growing out of the sale of 105½ acres of the Moses Hill survey in Sabine county, Tex.

"(2) That one W. R. Cousins, an attorney at law of Hemphill, Sabine county, Tex., was the attorney of record for the said George Tucker in bringing said suit against these plaintiffs, and the said Tucker contracted and agreed with the said Cousins to pay him for his service in bringing such suit, and in prosecuting the same to an adjustment, the sum of $50.

"(3) That these plaintiffs, desiring counsel to represent them in this suit, thus filed against them by the said Tucker, employed this defendant, E. P. Padgett, an attorney at law, to represent them in such litigation, and to prosecute the same to an adjustment, and these plaintiffs contracted with the said E. P. Padgett, attorney at law, as aforesaid, and agreed with the said Padgett to pay him the sum of $50 for representing their interest in such litigation, and to prosecute the same to an adjustment.

"(4) That, while said suit was pending on the docket of said county court, a proposition of settlement was submitted by the said Tucker and his counsel, W. R. Cousins, to the said E. P. Padgett, attorney for these plaintiffs, to the effect that the said Tucker would settle with these plaintiffs the matters involved in such litigation, if these plaintiffs would pay to the said Tucker the sum of $400.

"(5) That the subject of such litigation was as follows: That heretofore, to wit, on or about the 22d day of September, 1909, the said George Tucker and one of the plaintiffs herein, Catherine Hines (who was then Catherine Tucker), sold to A. M. Jones and G. E. Pratt 105½ acres of the Moses Hill survey, in Sabine county,. by their deed in writing bearing said last-mentioned date, which said deed is of record in Volume 4, pages 6 and 7, of the deed records of Sabine county, Tex., to which said deed and the record thereof reference is hereby made for a full and complete description of said land. That the consideration paid and to be paid by the said A. M. Jones and G. E. Pratt for said lands was $1,-584.98, of which sum $500 was paid in cash, and the balance in six notes of the sum of $180.83 each, with interest at 10 per cent. per annum from date until paid. That, after the money was paid, and the notes were executed, the money and the notes were placed in the First National Bank of Hemphill, and after this was done the plaintiff, Catherine Hines, who was then Catherine Tucker, married the plaintiff herein, ―――― Hines, and after such marriage these plaintiffs withdrew the $500 from the bank, and also took possession of the notes, and the suit as filed by the said George Tucker was to adjust the rights of these plaintiffs and the said George Tucker in the money and in the notes.

"(6) That the proposition as submitted by the said George Tucker, and his attorney, W. R. Cousins to the said E. P. Padgett, was to the effect that, if the plaintiffs herein would pay to the said George Tucker the sum of $400, the said George Tucker would give to these plaintiffs his interest in the $500 and in the notes.

"(7) That the said E. P. Padgett, as attorney for these plaintiffs, did not submit the proposition to these plaintiffs as made to him by the said Cousins and the said George Tucker, but did submit to these plaintiffs the following proposition: That is, the said E. P. Padgett represented to these plaintiffs that they could not recover in excess of the one-half interest in the said money and notes, and that the said Tucker and Cousins had submitted to him, as attorney for these plaintiffs, a proposition to settle the matters involved in said lawsuit by the said Tucker taking a one-half interest in said notes, and these plaintiffs taking a one-half interest in said notes, and their said counsel, E. P. Padgett, having advised these plaintiffs this was all they could recover in the litigation, and he having advised them to adjust said lawsuit by accepting the proposition as explained to them by him, they authorized the said E. P. Padgett to adjust the said lawsuit with the said Tucker by paying to the said Tucker a one-half interest in the consideration for said lands as stated above.

"(8) That this proposition was agreed by these plaintiffs on or about the 24th day of August, 1914, and on such date there was due on the notes the sum of $――――, together with $500, making the sum of $――――, which these plaintiffs understood was to be divided between them and the said Tucker.

"(9) That said Padgett never did submit to these plaintiffs the proposition which had been submitted to him by the said Tucker and said Cousins, wherein the said Tucker agreed to take $400 for his interest in the notes and the money.

"(10) That believing that the proposition as submitted to them by the said Padgett was to their interest, and was the proposition. as submitted to him by the said Tucker, they delivered all of said notes to the said E. P. Padgett, and authorized him to adjust the matter with the said Tucker and said Cousins.

"(11) That the said Padgett took the said notes and cashed the same, and realized from said notes the sum of $――――.

"(12) That from said money so received by him, the said Padgett paid to the said Cousins and Tucker the sum of $400, and that he paid to these plaintiffs the sum of $200.

"(13) That he represented to these plaintiffs that he had realized $1,000 on such notes, and, as these plaintiffs had already received $500 in money, the said Padgett represented to these plaintiffs that he had paid to the said Cousins and Tucker the sum of $750, and that $250 was due to these plaintiffs, and that these plaintiffs were due him $50 for his services, which he took from the $250, and paid to these plaintiffs the sum of $200. That thus these plaintiffs realized on said adjustment the sum of $700.

"(14) These plaintiffs further say that on the proposition as submitted by the said Tucker and Cousins, to the effect that the said Tucker should receive $400, after paying the said $400 to the said Tucker and Cousins, the said Padgett had in his hands the sum of $――――, all of which belongs to these plaintiffs, and which should have been paid to them by him, the said Padgett.

"(15) That, if the said Padgett had not represented to these plaintiffs and advised them to settle on the proposition of dividing the funds equally between these plaintiffs and the said Tucker, they would not have done so.

"(16) That the said Padgett never did go to these plaintiffs and submit to them the proposition to adjust the litigation on the basis of $400 to the said Tucker.

"(17) That, by adjusting the matter in which he did, the said Padgett has wrongfully withheld from these plaintiffs the sum of $――――, which came into his hands by reason of the settlement, and these plaintiffs having paid to the said Padgett the $50, which they agreed to pay, they were due him nothing further for his services in this behalf. That all the said funds belong to these plaintiffs.

"(18) By reason of the conduct of the said Padgett, he has caused the plaintiffs to suffer

damages in the sum of $———, which said sum they have often demanded of the said Padgett, and which he refused to pay."

Afterwards they filed a supplemental petition, as follows:

"First. Plaintiffs say: If they are mistaken in the allegation in their original petition, to the effect that defendant sold the notes therein sued on, then they say that the said defendant hypothecated the notes therein sued on to the First National Bank of Hemphill, and drew on said notes the sum of $683, or about that sum, this being the correct figure so far as plaintiffs have been able to learn, that the defendant gave his note for said sum, and placed these notes as collateral, to secure the same.

"Second. That of the said sum so received $400 was paid to said Tucker and Cousins, and $50 was paid to the said Padgett, and $200 was paid to these plaintiffs: that is, these plaintiffs were obligated to pay the said Tucker and Cousins $400, and they did pay the same, through the said Padgett, and the said Padgett paid to these plaintiffs $200, and these plaintiffs understood that they were paying the said Padgett $50, leaving an equity in said notes of $528.09 belonging to these plaintiffs.

"Third. These plaintiffs further say that they were advised that the said First National Bank of Hemphill still holds the notes of these plaintiffs, and that the same are held as collateral, to secure the note given by the said Padgett, for the above-mentioned note of $683, or whatever sum the note may have been.

"Fourth. These plaintiffs say that the equity in said notes, in excess of the sum of $650, belongs to these plaintiffs.

"Fifth. They further say that the said Padgett advised them at the time the settlement was made, as pleaded in their original petition, that he had sold the notes as herein pleaded by these plaintiffs, and they did not know to the contrary until since the convening of this term of this court.

"Sixth. They say that the First National Bank of Hemphill should be made a party to this suit to show what interest they have in the above-described notes.

"Wherefore, these plaintiffs pray that the entire transaction between them and the defendant be fully inquired into, and that equity be done, between plaintiffs and this defendant. They further pray the said First National Bank of Hemphill be cited to answer herein, and, on trial hereof, that they have judgment against the First National Bank of Hemphill, for the title and possession of the above-described notes, subject to lien of the said bank for whatever sum may be justly charged against said notes, and that such orders may be made as will protect the rights of all parties herein, and for general and special relief, both in law and in equity, and as in their original petition plaintiff will ever pray."

Also, on April 5, 1915, they filed their trial amendment as follows:

"Now come the plaintiffs, and, leave of the court having been had and obtained, files this their first trial amendment, and for plea in this behalf, as to paragraph 8 in original petition, they say that on or about the 24th day of August, 1914, there was due on the notes the sum of $1,178.09, together with $500, making the sum of $1,678.09.

"Second. That as to the eleventh paragraph of plaintiffs' petition, plaintiffs say that the said Padgett took the said notes and cashed the same, and that the notes were of the value of $1,178.09, which plaintiffs understood was to be divided between plaintiffs and the said Tucker.

"Third. That as the fourteenth paragraph of plaintiffs' petition, they say that after paying the said $400 to the said Tucker and Cousins, the said E. P. Padgett had in his hands

effects of the value of $778.09, which belonged to these plaintiffs.

"Fourth. That the said sum of $778.09, as above named, was the property of these plaintiffs, and out of this sum the plaintiffs were due the said Padgett the sum of $50 as attorney's fee. That after paying the said sum of $50 he still had in his hands the effects belonging to these plaintiffs, the amount of $728.09, and from this he paid the plaintiffs the sum of $200, leaving in the hands of defendant effects of the value of $528.09, belonging to these plaintiffs and which he converted to his own use.

"Fifth. As' to the eighteenth paragraph of said petition, these plaintiffs say, by reason of the conduct of the said Padgett, he has caused plaintiffs to suffer damage of the sum of $528.09, which said sum they have often demanded of the said Padgett, and which he has refused to pay.

"Sixth. Further pleading in this behalf, these plaintiffs say that the above allegations are made for the purpose of supplying the omissions in the paragraph as named, and they asked that the same be taken and considered as a part of the paragraphs of the plaintiffs' original petition as above numbered."

The defendant answered by general demurrer, denying the material allegations in plaintiffs' petition, and by pleading that he bought the interest of Tucker in the notes for $500, and the interest of the plaintiffs in the notes for $200.

The case was tried before a jury on special issues on the 28th day of September, 1915, and resulted in a judgment against the appellant for the sum of $528.09, with 6 per cent. interest from the 24th day of August, 1914, and costs of suit. Motion for new trial was made and overruled, and the case is before this court for adjudication.

By appellant's first assignment of error, the action of the court is challenged in overruling and refusing to sustain his general exception to the original petition, the supplemental petition, and the trial amendment.

[1] We do not believe, after a careful consideration of the matter, that the action of the court was error. The facts were set out in the petition, together with the supplemental and trial amendment, and the only legal conclusion to be arrived at was that, if the facts proved to be as represented, the appellant was due the appellee the sum as found by the judgment of the lower court. Therefore the assignment is overruled.

The second assignment is as follows:

"The court erred in not submitting the whole cause, with all the evidence and proper charge submitting all the rules of law applicable to the pleading and the evidence, to the jury for their determination as is provided and meant by the Constitution and laws of the state of Texas, guaranteeing the right of trial by jury, all of which is shown by bill of exceptions No. 2, herewith filed and made a part hereof, and asked to be considered in connection herewith."

[2] If there was anything omitted from the charge of the court that was necessary in order that the jury might have a proper presentation of the case from the appellant's standpoint, said matter should have been requested by special instruction, or objection should have been made at the time and before the

charge was read to the jury. In the absence of any requested instruction or objection to the charge made at the proper time, the appellant cannot be heard now to complain. The assignment is therefore overruled.

The third assignment challenges the action of the lower court in submitting the cause to the jury on special issues, without written request of either party.

[3] The Legislature was authorized to enact a law permitting the judges of the district courts to submit questions to a jury on special issue, without being requested to do so, and, in our judgment, such enactment is not obnoxious to the Constitution. The assignment is therefore overruled.

Complaint is made that the court erred in his charge to the jury as follows:

"The burden of proof rests upon the defendant, E. P. Padgett, to show by a preponderance of the testimony that he bought the notes for himself."

If this was error, objection should have been made to the charge of the court, in writing, with respect to the matter complained of, before the charge was submitted to the jury. In the absence of proper request and objection, as heretofore stated, this court is not authorized to review the matter. The fourth assignment is therefore overruled.

Appellant's fifth assignment complains that the court erred in giving in his charge to the jury question No. 1, as follows:

"At the time E. P. Padgett made the settlement, Geo. Tucker and his counsel, W. R. Cousins, was the agreement between Geo. Tucker and W. R. Cousins on the one part, and E. P. Padgett on the other part, that the $400, which was paid to Geo. Tucker by E. P. Padgett, was paid in compromise of Tucker's interest in the lawsuit then pending between Geo. Tucker and his daughter, Kate Hines, or was the $400 paid by E. P. Padgett to Geo. Tucker in purchase for himself of the interest of Geo. Tucker in the notes?"

In our judgment, it was a proper issue to be submitted to the jury, and, as before stated, no complaint was made of this or any other charge of the court at the proper time, and neither was a request made for such instruction as the appellant believed would properly present the issue, or present his contentions in an affirmative way. Therefore complaint will not now be heard of the matter. This assignment is overruled.

What is said here also applies to appellant's sixth, seventh, eighth, and ninth assignments.

[4] By the tenth assignment of error, the action of the lower court is challenged in admitting in evidence before the jury, over defendant's objection, a certain written instrument, dated 9th day of August, 1910, purporting to have been signed by George Tucker, as follows:

"County of Sabine, State of Texas.

"No all men by these presences: That I Geo. Tucker of the county of Sabine and state of Texas, have his day give, granted and willed, and by these presences do will and forever pass title to my daughter, Kattie Tucker, all of the following described property, to wit:

One vendor's lien note of $333.33 due me by Ed. Pratt of Hemphill, Texas, and one vendor's lien note of $333.33 due me by casher jones, of the First National Bank, of Hemphill, and one vendor's lien note of $333.33, due by Bill Goodrich, Esq., of Hemphill, Texas, all drawing eight per cent. interest per annum and ($300.00) three hundred dollars now in the Hemphill Bank of Hemphill, Texas. The title to the above-described property and increase of same, passes absolutely to my daughter, Kattie Tucker, forever at my death.

"Witness my hand at Bronson, Texas, this the 9th day of August, 1910.

his<br>"George X Tucker.<br>mark

"Witnesses: W. R. Low. T. J. Bickley.

"State of Texas, County of Sabine.

"Before C. E. Casey, a notary public in and for Sabine county, Texas, George Tucker, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this the 9th day of August, A. D. 1910.

"C. E. Casey,

"Notary Public, Sabine County, Texas.

"The State of Texas, County of Sabine.

"I, F. P. Adams, clerk of the county court of said county, do hereby certify that the foregoing instrument of writing, dated on the 9th day of August, A. D. 1910, with its certificate of authentication, was filed for record in my office this the 28th day of October, A. D. 1913, at 5 o'clock p. m. and duly recorded this the 14th day of November, A. D. 1913, at 8 o'clock a. m. in the deed records of said county, in Volume 8, pages 367–368.

"Witness my hand and seal of the county court, of said county, at office in Hemphill, the day and year last above written.

"F. P. Adams, [Seal.]

"Clerk County Court, Sabine County, Texas."

Indorsed on back:

"This is my last will of all my property to my daughter, Kattie. All of the rest of my children, Andrew Tucker, Lucy Block and Allie Crouch, having heretofore received their part in full.       Geo. Tucker."

It would be needless for us to construe the legal effect of the instrument, but there is no question that the same was admissible in evidence. Therefore this assignment is overruled.

The eleventh assignment of error complains that the court erred in refusing to instruct a verdict for the defendant.

Without rehearsing the testimony, and without setting the same out at length, it is sufficient to say that in our opinion the action of the court was not error in this respect, and that the case should have been submitted to the jury. The assignment is therefore overruled.

By the twelfth assignment of error, the action of the trial court is challenged in not having submitted the question of damages and amount of damages to be by them determined.

[5] It is objected that this assignment should not be considered by the court, because the appellant submits no statement thereunder. Upon inspection, we find the objection well taken. It has been held that an assignment not followed by a proposition of

law, or with statement from the record, will not be considered. M., K. & T. Ry. Co. v. Blachley, 50 Tex. Civ. App. 141, 109 S. W. 995.

[6] Moreover, the record does not show that any request was made for the submission of such an issue to the jury, and appellant is in no position to complain. Therefore this assignment is overruled.

[7] Complaint is made that the court erred in allowing Dan Walker, counsel for plaintiff, in his concluding argument to the jury, "to argue and insist, over the objection of the defendant, that if the jury would answer the questions as he had insisted they should answer them, the defendant Padgett would get every dollar of his money back with 10 per cent. interest that he had paid the bank, with a handsome attorney's fee added to it, none of which was an issue in the case."

Objection is made to this assignment that it is not followed by a statement from the record. We find this to be true. However, the record shows a bill of exception in this matter, as follows:

"Be it remembered that on the trial of the above numbered and styled cause, in this court on the 27th day of September, A. D. 1915, the following proceedings were had, to wit: Because the court erred in allowing Dan Walker, of counsel for plaintiffs, in his concluding argument to the jury, to argue and insist, over the objection of the defendant, that if the jury would answer the questions as he had insisted they should answer them that the defendant Padgett would get every dollar of his money back with 10 per cent. interest that he had paid the bank with a handsome attorney's fee added to it, none of which was an issue in the case. To which action of the court, in refusing to instruct said verdict, the defendant then and there in open court excepted, etc."

We are somewhat at a loss, the way this matter is presented, to discover wherein lies the subject of complaint. But, from the reading, we gather that, because of this improper argument, appellant desired that the court would instruct the jury, not that the argument was improper and not germane to any issue, but that the court should have requested the jury to bring in a verdict for appellant. The assignment being in this attitude, we cannot see that it was error in the court not complying with the request of appellant. However, we see no cause of complaint in the matter referred to. Said assignment is overruled.

The fourteenth assignment complains that the court erred in allowing and permitting Dan Walker, counsel for plaintiffs, in his concluding argument to the jury, over the objection of defendant, to argue and insist before the jury that the instrument of writing dated on the 9th day of August, 1910, purporting to have been signed by Geo. Tucker, was an absolute deed of conveyance and conveyed all the interest that he had and held in the notes sued on to Mrs. Katy Hines, and that the defendant Padgett knew it at the time he paid old Tucker the $400, but that Padgett would do anything for the sake of making his seven hundred dollars.

[8] No request seems to have been made to the lower court to instruct the jury that the argument was improper, and, in the absence of such action, this court is powerless to act in the premises. Moreover, the assignment is not followed by a proposition, and while the argument appears to have been improper and personal, as above stated, the attention of the court should have been called to the same, and, upon the court's refusal to act in the premises, a bill of exception should have been taken. In the present state of this record, no merit is found in the assignment, and the same is overruled.

Complaint is made in the fifteenth assignment that the court erred in rendering judgment in favor of the plaintiffs against the defendant, for the sum of $528.09, with 6 per cent. interest per annum from the 24th day of August, 1914, for the reason that the suit was for damages, and there were no damages alleged or proved.

No request was made for instruction on this point, or objection urged to the charge of the court. The charge of the court, and the answers of the jury, were as follows:

"In this the court submits to you certain questions to be answered by you, and which questions, when so answered, you will form the basis on which the court will render judgment herein.

"The burden of proof rests upon the plaintiff to show by a preponderance of the testimony the material allegations in their petition, and the burden of proof rests upon the defendant, E. P. Padgett, to show by the preponderance of the testimony that he bought the notes for himself.

"Question No. 1. At the time E. P. Padgett made the settlement with George Tucker and his counsel W. R. Cousins, was it the agreement between George Tucker and W. R. Cousins on the one part, and E. P. Padgett on the other part, that the $400 which was paid to George Tucker by E. P. Padgett was paid in compromise of Mr. Tucker's interest in the lawsuit then pending between George Tucker and his daughter, Kate Hines, or was the $400 paid by E. P. Padgett to George Tucker in purchase for himself of the interest of George Tucker in the notes? If you find the fact to be that the $400 was paid in compromise of the suit, you will answer this question with the word, 'Compromise.' But if you find the fact to be that E. P. Padgett bought the interest of George Tucker in the notes for himself, then you will answer the question with the word, 'Purchase.' Answer: 'Compromise.'

"Question No. 2. At the time E. P. Padgett paid to Mrs. Kate Hines the $200, did Mrs. Kate Hines know or understand that E. P. Padgett was purchasing her interest and the interest of George Tucker in the notes, and was she selling her interest in the notes to E. P. Padgett? You will answer this question, 'Yes,' or 'No,' as you may find the facts to be. Answer: 'No.'

"Question No. 3. At the time E. P. Padgett paid to Mrs. Kate Hines the $200 and at the time E. P. Padgett paid to George Tucker the $400, was E. P. Padgett representing Mrs. Kate Hines as her attorney? You will answer this question, 'Yes,' or 'No,' as you may find the facts to be. Answer: 'Yes.'

"You are the sole and exclusive judges of the facts proved, the credibility of the witnesses,

and the weight and value to be given to their testimony, but the law you receive from the court, and you are bound to be governed thereby."

"Now comes E. P. Padgett, defendant in the above styled and numbered cause, and asks the court to submit the following special issues to the jury:

"Question No. 4. At the time E. P. Padgett paid to Mrs. Katie Hines the $200, did Mrs. Hines know or understand that E. P. Padgett was purchasing her interest in the notes? Answer, 'Yes,' or, 'No.' Answer: 'No.'

"Question No. 5. At the time that E. P. Padgett paid to Mrs. Katie Hines the $200, did Mrs. Hines know or understand that E. P. Padgett was purchasing the interest of George Tucker in the notes? Answer, 'Yes,' or 'No.' Answer: 'No.'

"Question No. 6. At the time that E. P. Padgett paid to Mrs. Katie Hines the $200, was she selling her interest in the notes to E. P. Padgett? Answer, 'Yes,' or 'No.' Answer: 'No.'

"Question No. 7. At the time E. P. Padgett paid to Mrs. Katie Hines the $200, was E. P. Padgett representing her in this transaction as her attorney? Answer, 'Yes,' or 'No.' Answer: 'Yes.'

"Question No. 8. At the time E. P. Padgett paid to George Tucker the $400, was E. P. Padgett representing Mrs. Katie Hines in that transaction as her attorney? Answer: 'Yes.'

"Given.            E. P. Padgett, Defendant."

In addition, we might say, the value of the notes was a matter of calculation. There is no merit in this assignment, and it is therefore overruled.

[9] The sixteenth assignment of error complains that the court, although requested in writing, failed to file his conclusions of law and fact.

The case having been tried by jury is sufficient answer to this assignment, and the same is overruled.

Every issue requested was submitted to the jury. There were no requested instructions that were not given, and no objections to the charge as given. The issues presented to the jury were passed on, and, in the light of this record, we cannot say improperly.

Finding no error in the action of the lower court, the judgment is in all things affirmed.